COMPTON *v.* HEISSENBUTTAL *et al.*

*(City Court of New York, General Term.* March 10, 1891.)

DAMAGES—BREACH OF CONTRACT.

> Under a contract of affreightment for transportation by plaintiff's boat, defendants agreed to pay "all wharfage at place of consignment." A bill for such wharfage having been presented to plaintiff, he notified defendants, who promised to pay it. Afterwards the boat was seized by the United States marshal in procedings *in rem* for such wharfage, and plaintiff notified defendants, who said they would release it. After waiting 10 days, plaintiff paid the wharfage and expenses, and sued defendants to recover such sums, as well as $100 for the loss of the use of the boat. *Held,* that plaintiff was justified in relying upon defendants' promises, and the damages claimed were not too remote.

Appeal from trial term.

Argued before EHRLICH, C. J., and VAN WYCK, J.

*Putney, Bishop & Slade,* for appellants. *Hyland & Zabriskie,* for respondent.

VAN WYCK, J. Under a contract of affreightment, the plaintiff agreed to transport for defendants a cargo of coal by his canal-boat John Le Vally, from South Amboy to their yard at Gowanus creek, Brooklyn, and they were to pay the freight and "all wharfage at place of consignment." In March, 1882, the boat, with cargo, reported at place of consignment along-side of the dock of one Wood, and was by defendants detained there for 10 days, entitling Wood to $10 for wharfage, and then, by defendants' instruction, she proceeded to New York with cargo still aboard. November, 1882, Wood presents his bill of $10 to plaintiff, who informs him that defendants had agreed to pay it, and asks and obtains a few days in which to inform them. He sees defendant Heissenbut-

tal, who says: "I will settle the bill. You need not look any further about the bill." Ten days afterwards the United States marshal seizes the boat in proceedings *in rem*, instigated by Wood for the wharfage. Whereupon plaintiff again visits Heissenbuttal, who tells him: "You need not give yourself any further trouble about it. I will either pay the bill or bond the vessel, so you can have it;" neither of which he does, and 10 days after the seizure the plaintiff pays the marshal $55.54 costs and expenses of seizure and detention, and the wharfage of $10, and thereby regains possession of his boat, and sues for these two sums, and also for $100 for the loss of the use of boat for the 10 days,—all of which, together with $77 interest, makes $242.54, the amount of the verdict. The appellants insist that the measure of damages which should prevail in this case precludes the recovery of more than $10, the wharfage and interest thereon; and that the $55.54, the expenses and costs of regaining possession of his boat, which the plaintiff claims as damages, is too remote; and, of course, that the $100 for loss of the use of boat for the 10 days is damage still further removed from the limit line. By their express agreement to pay "all wharfage," the defendants assumed, so far as the plaintiff is concerned, a primary obligation, to which the liability of the plaintiff or his boat is secondary; and although as to the wharfinger the boat itself can be held liable, and to that end he may, by proceedings *in rem*, have her seized, and held by the executive officer of the United States court until it decrees her sale, still the defendants have, in effect, by their express contract, agreed to avert this very disaster by paying the wharfage; for they are presumed to know the exact course which the law will pursue in case of their failure to do so. The rule of law is that persons will be presumed to have contemplated that such damages will flow from their default as persons of ordinary care and caution would reasonably except to result from their failure and neglect to perform some act which another is under contract to perform, and with whom and in whose stead they have agreed to perform it. The seizure and detention of a vessel is to be reasonably expected by those who have failed to pay the wharfage due for the time which she has laid along-side of the dock, and, as the plaintiff first notified the defendants that the dock-owner had presented a claim for wharfage, it was their duty to pay it as they had originally agreed, and, upon failure to do so, are liable to him for his necessary costs and expenses in releasing her from such seizure. When, again, they were notified of the seizure, requested to pay or defend, and promised to do either the one or the other, the plaintiff was justified in relying upon such promise, and waiting a reasonable time in order that they might have the opportunity to which they were entitled of defending, before the plaintiff was called upon to release her from the seizure, and regain her possession, by himself paying the claims against her, and so put a stop to all further damage. The verdict of a jury should not be disturbed which finds that the plaintiff did so rely, and that 10 days was such reasonable time, under the circumstances, and awards the usable value of the boat for that time as damages for her detention, and also the costs and expenses of relieving her from seizure. Judgment affirmed, with costs.